UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| X.A.D., a minor, by her mother, | ) | |
| LENORE DEPP, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-00753-SEB-TAB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |
| | ) | |

**ENTRY**

Ms. Lenore Depp brought this action on behalf of her minor daughter, X.A.D.,
seeking judicial review of the Commissioner=s final decision denying her May 3, 2007
application for Supplemental Security Income (SSI) under Title XVI of the Social Security
Act, 42 U.S.C. ' 1382c(a)(3), on the grounds that X.A.D. had a disability onset date of
April 17, 2007. (R. 100).   Her application was denied initially (R. 59-62) and upon
reconsideration. (R. 66-69).   After a hearing conducted on March 22, 2010, the ALJ ruled
that X.A.D. was not disabled since her application date. (R. 21).   On April 4, 2011, the
Appeals Council denied Ms. Depp=s request for review of this decision (R. 1-3), thereby
making the Commissioner=s decision final for purposes of judicial review.   20 C.F.R. '
416.1481.   Ms. Depp asserts that the decision denying her minor daughter supplemental

benefits was not supported by substantial evidence and requests that the Court reverse the decision of the Commissioner.   For the reasons detailed herein, we deny her request and affirm the decision of the Commissioner**.**

## I.   Applicable Law and Standard of Review

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if the findings are supported by substantial evidence in the record. 42 U.S.C. 405(g); Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir.2004); Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir.2003).   Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. Wood v. Thompson, 246 F.3d 1026, 1029 (7th Cir.2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Carradine v. Barnhart, 360 F.3d 751, 758 (7th Cir.2004). This limited scope of judicial review reflects the principle that Congress has designated the Commissioner, not the courts, to make disability determinations: AIn reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence.@  Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir.2004); Carradine, 360 F.3d at 758.  While review of the Commissioner's factual findings is deferential, review of his legal conclusions is *de novo*. Richardson*, supra.*

An individual under the age of eighteen is eligible for disability benefits under the Supplemental Security Income (ASSI@) program of the Social Security Act, 42 U.S.C. ' 1381 *et seq.,*[1] if she Ahas a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.@ 42 U.S.C. ' 1382c(a)(3)(C)(I).   A physical or mental impairment is one that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Id. ' 1382c(a)(3)(D).   In determining whether impairments are disabling, the combined effect of all of the child's impairments must be considered, without regard to whether any single impairment alone is of disabling severity. 42 U.S.C. ' 1382c(a)(3)(G).

By regulation, the Social Security Administration (ASSA@) has determined that satisfaction of one of the Medical Listing of Impairments ("Listing"), 20 CFR Part 404, Subpart P, Appendix 1, Part B, fulfills the statutory requirement that a child's impairment

---

[1]   Two programs of disability benefits are available under the Social Security Act: Disability Insurance Benefits (ADIB@) for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. ' 423, *et seq.,* and Supplemental Security Income benefits (ASSI@) for uninsured individuals who meet income and resources criteria, 42 U.S.C. ' 1381, *et seq.* A minor can be eligible for disability benefits only under the SSI program.

or combination of impairments Aresults in marked and severe functional limitations.@   The Listing, Part B, is a compilation of medical conditions, divided into fourteen major body systems, that the SSA has pre-determined are disabling in children. 20 CFR ' 416.925.   In general, each listed condition is defined by two sets of criteria: diagnostic findings that substantiate the existence of a listed condition and sets of related functional limitations that substantiate the condition's disabling severity. Id.

A child's impairment or group of impairments can satisfy a listed condition in any of three ways: by meeting all the listed criteria for the condition, 20 CFR ' 416.925(c)(3); by medically equaling the criteria, id. ' 416.925(c)(5); or by functionally equaling the criteria, id. ' 416.926a(a).   A child's impairment *meets* a listed condition only when it satisfies all of the criteria of the listing. 20 CFR ' 416.925(c)(3) and (d).   A child's impairment *medically equals* a listed condition when it is at least equal in severity and duration to the criteria of a listed condition. Id. ' 416.926(a).   Medical equivalence will be found when (1) the child's impairment, though listed, is lacking one or more of the medical or severity criteria, but other findings related to the impairment are of at least equal medical significance to the listed criteria, id. ' 416.926(b)(1); (2) the child's impairment is not a listed condition but the impairment's medical and severity findings are of at least equal medical significance to a closely analogous listed condition, id. ' 416.926(b)(2); or (3) the child has a combination of impairments, no one of which equals a listed condition, but the impairments' medical and severity findings are of at least equal medical significance to a

4

listed condition, id. ' 416.926(b)(3).

A child's impairment or combination of impairments will *functionally equal* a listed condition when it is of listing-level severity, meaning that it results in a Amarked@ limitation in two domains of functioning or an Aextreme@ limitation in one domain. 20 CFR ' 416.926a(a). The domains of functioning are (1) acquiring and using information, (2) attending to and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for self, and (6) health and physical well-being. Id. ' 416.926a(b)(1).  The SSA has defined constituent activities within each domain and their normal levels of performance at different age groups, id. ' 416.926a(g)-(l).  In general, a Amarked@ limitation exists when a child's impairment or combination of impairments Ainterferes seriously with [her] ability to independently initiate, sustain, or complete activities@ within a particular domain. It is a limitation that is Amore than moderate@ but Aless than extreme,@ and is the level of functioning that is expected with scores that are more than two, but less than three, standard deviations below the mean on standardized tests. Id. ' 416.926a(e)(2).  An Aextreme@ limitation is one that interferes Avery seriously@ with a child's ability to perform activities within a domain.  It is Amore than marked,@ and is the level of functioning that is expected with scores at least three standard deviations below the mean on standardized testing. Id. ' 416.926a(e)(3).

SSA has established a three-step sequential process for evaluating child-disability claims. 20 CFR ' 416.924. If disability eligibility can be determined at any step in the

sequence, an application will not be reviewed further. Id. ' 416.924(a).   At the first step, if the child is engaged in substantial gainful activity, *i.e.,* is earning money, then she is not disabled. Id. ' 417.924(b).   At the second step, if the child's impairments are not severe, then she is not disabled.   A severe impairment or combination of impairments is one that causes Amore than minimal functional limitations." Id. ' 416.924(c).   Third, the child's impairments, either singly or in combination, must satisfy the criteria of at least one of the conditions included in the Listing.   Id. ' 416.924(d).   If a child's impairments pass all three steps, and satisfy the duration requirement, then she is deemed disabled.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a disability examiner and a physician or other appropriate medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts.   If denied again, the applicant may request a hearing before an administrative law judge (AALJ@).[2]   An applicant who is dissatisfied with the decision of the ALJ may request SSA's national Appeals Council to review the decision.   If the Appeals Council either declines to review or affirms the decision, then the claimant may file an action in district court for judicial review. 42 U.S.C. ' 405(g).   If the Appeals Council declines to review a

---

[2]   Initial and reconsideration reviews in Indiana are performed by an agency of the state government—the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration under arrangement with the Social Security Administration (SSA). 20 C.F.R. Part 404, Subpart Q (' 404.1601 *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## II. Claimant's Background

X.A.D. was born on June 15, 1997 following a normal pregnancy and childbirth, as reported by her mother, Ms. Depp.   X.A.D. was first assessed for development delays around six years of age.   The school psychologist, Marjorie K. Rusch, N.C.S.P., L.C.S.W. concluded that X.A.D. was mildly retarded based on testing conducted in March and April 2004, in which she scored a 72 verbal intelligence quotient (IQ), 74 performance IQ, and 71 full-scale IQ on the Wechsler Intelligence Scale for Children (WISC-III), and placed her in a special education group.   Her test results showed that she was approximately one to two years behind academically but with a "relative strength" in activities of daily living. Several years later in 2007, when X.A.D. was nine years of age, Ms. Depp claimed that, in addition to her cognitive delays, her daughter also had a problem with anger management and sleeping, prompting her to apply for disability benefits.

Over the course of her treatment beginning in 2007, X.A.D. was seen by various medical, psychological, and educational professionals.   Dr. Greg Lynch, a Ph.D., H.S.P.P. psychologist with Indiana Psych Assessments, LLC, performed a childhood mental status evaluation on August 09, 2007 when X.A.D. was ten years of age.   Dr. Lynch concluded that X.A.D. had a learning disorder not otherwise specified, mild asthma (by report), moderate psychological stressors, and a Global Assessment of Functioning (GAF) of 53.

He noted that while school was her primary stressor and that she had a "somewhat overwhelmed" coping ability, X.A.D. also reported "adequate social support including her family and friends."   Dr. Lynch also observed that her maturity was "age-appropriate."

On September 27, 2007, Joseph A. Pressner, Ph.D. and Jennifer L. Hoke, C.C.C., S.L.P., the state consultants assigned by the Disability Determination Bureau, completed a Childhood Disability Evaluation Form and concluded that, while X.A.D.'s learning impairments were severe, they did not equal or functionally equal any Listing.   Dr. Pressner and Dr. Hoke completed a second Childhood Disability Evaluation Form on March 27, 2008, reporting the same findings:   marked limitation in acquiring and using information; less-than-marked limitation in attending and completing tasks, interacting and relating with others, and health and physical well being; and no limitation in the remaining domains.   During this same timeframe, Ms. Depp reported to Dr. Syeda Khatib, M.D., a physician with Midtown Community Mental Health Center, that X.A.D. experienced "worry about everything" and that she had sleep problems.   Dr. Khatib put X.A.D. on Zoloft for anxiety not otherwise specified and diagnosed her with a GAF of 55.

On July 8, 2008, Ms. Depp contacted Dr. Khatib to report that X.A.D. was experiencing increased irritability and displaying physical aggression.   In response, Dr. Khatib added Abilify to X.A.D.'s Zoloft medication.   Ms. Depp subsequently reported that X.A.D.'s symptoms had improved and that she wanted to maintain X.A.D.'s prescription regimen.

By September 2008, Ms. Depp denied that X.A.D. was in need of therapy; yet, she wanted to continue her medications because they had resolved X.A.D.'s sleep problems.

More than a year later, in December 2009, the school counselor at X.A.D.'s elementary school, Jeanette Jackson, noted that X.A.D. was displaying marked limitation in three domains:  acquiring and using information, attending and completing tasks, and interacting and relating with others, and that she had less than marked limitation in the remaining three domains:  moving about and manipulating objects, caring for yourself, and health and physical well being.  Ms. Jackson scored X.A.D.'s math performance as "average" and her behavior as average within the areas of following directions and disrupting class; X.A.D. was rated as "somewhat of a problem" in relationship with peers, assignment completion, and organizational skills.  None of these educational or behavioral factors were listed as "problematic" by her teachers.

At the time of the hearing, in March 2010, X.A.D. was twelve years old and studying in the seventh grade special education program at Creston Middle School.

### III.   Discussion

As previously noted, Ms. Depp filed an application for benefits for her daughter, X.A.D., in May 2007 (R. 100-102).   Her application was denied initially (R. 59-62) and upon reconsideration. (R. 66-69).   After a hearing held on March 22, 2010, the ALJ found that X.A.D. was not disabled since her application date. (R. 21).   On April 4, 2011, the

Appeals Council denied Ms. Depp=s request for review of this decision. (R. 1-3). The ALJ

denied X.A.D.'s application on April 20, 2010 (R. 7-30) and the national Appeals Council

denied X.A.D.'s request for review on February 02, 2011. (R. 1-3).

In reviewing the application for benefits, the ALJ underwent the required three-step

sequential process for evaluating disability claims for children.   At the first step, the ALJ

found that X.A.D. was not engaged in substantial gainful activity as of the application date.

At the second step, she found that X.A.D. had the following severe impairments: learning

disorder and borderline intellectual functioning. (R. 13).   At the third step, she found that

X.A.D.=s impairments, individually or in combination, did not meet or medically equal any

of the listed impairments. (R. 13).   The ALJ also found that X.A.D.'s impairments did not

functionally equal any of the Listings. (R. 14-21).   She evaluated the credibility of reports

describing the extent of X.A.D.'s subjective symptoms according to the SSA's standard. 20

CFR ' 416.929; SSR 96-4p; and SSR 96-7p.   As a result of this evaluation, the ALJ found

that X.A.D. had marked limitation in the domain of acquiring and using information,

less-than-marked limitations in two of the six domains of functioning, and no limitation in

the remaining three.   Because X.A.D. did not meet or equal any of the Listings, nor did she

individually or in combination meet or medically or functionally equal any of the listed

impairments, the ALJ found that she was not disabled.   Thus, her application for SSI

benefits was denied.   When the Appeals Council denied X.A.D.'s request for review, the

ALJ's decision became the final decision of the Commissioner on X.A.D.'s application,

which we review here.

Ms. Depp does not dispute the conclusions reached at step one and step two of the analysis.   However, at step three, Ms. Depp asserts three errors in the ALJ's decision on behalf of X.A.D., her daughter.   She argues that the ALJ erred by (1) unfairly ignoring medical evidence that X.A.D. met Listing 112.02 (organic mental disorder) and failing to specify or discuss any particular Listing in the denial decision; (2) failing to summon a psychologist to testify as to X.A.D.⹁s mental status and health; and (3) ignoring and mischaracterizing treatment evidence which supports X.A.D.⹁s disability claim.   We address each of these issues below.

**Fairness of treatment and the mention of a specific Listing.**   An individual under the age of eighteen is eligible for disability benefits under the Supplemental Security Income (ASSI@) program of the Social Security Act, 42 U.S.C. ' 1381 *et seq.,* if she Ahas a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.@ 42 U.S.C. ' 1382c(a)(3)(C)(I).   The Claimant's first contention is that her daughter received Aunfair-unjust treatment;@ she further asserts that the ALJ did not consider whether X.A.D. met the criteria for any Listing with any specificity and that X.A.D. meets the criteria for Listing 112.02, organic mental disorder.   The ALJ's conclusion in this regard is set out in

a single sentence: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926)." (R. 13). Taken alone, this statement, found in section four of the ALJ's discussion, does appear to dispose of the eligibility issue in rather summary fashion. However, the ALJ discussed the evidence of X.A.D.'s impairments more expansively in section five of her decision, where she considered X.A.D.'s possible functional equivalence. Ms. Depp discounts the finding as unreasoned because the ALJ did not incorporate all the related information within a single paragraph.

Nonetheless, there is no requirement of such "tidy packaging." Buckhanon ex rel. J.H. v. Astrue, 368 F. App'x 674, 678-79 (7th Cir. 2010) (quoting *Rice v. Barnhart,* 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000)). The threshold set by the Seventh Circuit is that an ALJ should "mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir.2004); Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir.2003); *see also* Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir.2002) and Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006). The ALJ, in fact, made no specific mention of any one Listing, so the question we have before us is whether the ALJ merely performed a perfunctory analysis of the issue of whether X.A.D. met the criteria for any Listing. While the ALJ did not list every fact that she

considered in her deliberations she pointed to a variety of factors that influenced her opinion as well as the evidence upon which she based her conclusions.   With regard to X.A.D.'s limitations the ALJ cited the assessments of the professionals who examined X.A.D. between August 2007 and December 2009.   She determined that three practitioners' conclusions, which made no mention of any Listing, were "consistent with the longitudinal record as a whole" and thereby accorded to these assessments by Dr. Greg Lynch, Dr. Pressner, and Dr. Hoke significant weight.   None of these practitioners opined that X.A.D. met any Listing, let alone the criteria for Listing 112.02 (organic mental disorder).

The ALJ also considered but discounted the opinion of school counselor, Jeanette Jackson, who opined that X.A.D. was markedly limited in the acquiring and using information, attending and completing tasks, and interacting and relating with others. However the ALJ attributed lesser weight to Ms. Jackson's assessment due to its internal inconsistencies.   Ms. Jackson simultaneously scored X.A.D.'s math performance as "average" and her behavior as "average" within the areas of following directions and disrupting class; X.A.D. was rated as "somewhat of a problem" in relationship with peers, assignment completion, and organizational skills.   None of the educational or behavioral factors was listed as "problematic" by any of X.A.D.'s teachers nor by Ms. Jackson. These findings, the ALJ concluded, were "both internally inconsistent and inconsistent with the longitudinal medical record as a whole."   The ALJ therefore, placed "little

weight" on what she viewed as an outlying opinion.  This discretion in weighing and considering varying opinions on record, as discussed below, is a matter left to the ALJ.

The SSRs and regulations make it clear that the ALJ is responsible "for deciding the ultimate legal question of whether a listing is met or equaled." SSR 96–6p.  At the same time, however, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." Id. The Social Security regulations similarly direct that ALJs "consider the opinion given by one or more medical and psychological consultants designated by the Commissioner" at the step three equivalence determination. 20 C.F.R. § 404.1526(c).  Cirelli v. Astrue, 751 F. Supp. 2d 991, 1002-03 (N.D. Ill. 2010).  Consistent with these regulations, the ALJ weighed the evidence provided by the examining professionals.  None of the state consultants concluded that X.A.D. met the criteria for any Listing.  Therefore, even though the ALJ made no specific mention of any Listing, her opinion appropriately included in the balance the opinions of various treating professionals, as required under the SSRs.

In further support of her claim of unfair treatment by the ALJ, Ms. Depp cites Smith v. Secretary of Health, Education and Welfare, 587 F.2d 857 (7th Cir. 1978), a case which reversed a disability denial decision where the claimant was not represented by counsel and where the ALJ failed "to emphasize the desirability of producing, and to afford an

14

opportunity to produce expert testimony, as to her medical disabilities and their effect on her capacity to engage in any substantial, gainful work within the meaning of the Act.@ Id. at 860.   In our case, however, the issue of X.A.D.'s inability to be gainfully employed is not in question.   Furthermore, Ms. Depp=s daughter was represented by counsel.   Neither circumstance leading to the determination of unfairness in the Smith case inheres to the present situation.   As a result, we are unable to credit Claimant's contention that the ALJ's treatment was unfair.

In failing to show how the ALJ=s determination was unfair, Ms. Depp also omits any elaboration regarding her assertion that Athe decision should contain and should be based upon a fair and impartial presentation of the medical evidence submitted by the claimant or obtained from other sources.@   In Ray v. Bowen, the Seventh Circuit, in ruling that all medical evidence that is Acredible, supported by clinical findings, and relevant to the question at hand should be considered and discussed by the ALJ,@ 843 F.2d 998, 1002 (7th Cir. 1988) (quoting Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984)), in effect endorsed Claimant's view.   Here, the ALJ referenced X.A.D.'s mental impairments and discussed other factors in reaching her conclusion that treatment of X.A.D. had been largely successful.   The ALJ also observed that X.A.D. had "significantly improved" symptoms with medication.   She measured the factors arising in the school setting that "precipitate and aggravate" X.A.D.'s anxiety symptoms.   An ALJ is required to provide an A>accurate and logical bridge= between the evidence and the conclusion that the claimant

15

is not disabled,@ but she is Anot required to mention every piece of evidence.@ <u>Craft v.</u> <u>Astrue</u>, 539 F.3d 668, 673 (7th Cir. 2008) (quoting <u>Young</u>, 362 F.3d at 1002).   The Seventh Circuit has consistently held that an ALJ Aneed only ›minimally articulate her or her justification for rejecting or accepting specific evidence of a disability.‹@ <u>Rice v.</u> <u>Barnhart</u>, 384 F.3d 363, 371 (7th Cir. 2004) (quoting <u>Steward v. Bowen</u>, 858 F.2d 1295, 1299 (7th Cir. 1988)).   We find these standards satisfied here.   Ms. Depp≠s assertion that X.A.D. met the criteria of Listing 112.02 (organic mental disorder) is unsupported by the record, and she has further failed to produce specifics that would support her contention either of unfairness or that essential evidence was omitted from the ALJ's review.

Having failed to establish that the ALJ was unfair-unjust in her evaluation of X.A.D.≠s behavioral and mental problems, Ms. Depp's objections are not well taken. Further, she has failed to specifically mention a Listing error, particularly where none was identified by an assessing psychologist, that resulted in reversible error.    Finally, Ms. Depp has not established that the ALJ's conclusions were not based on sufficient evidence as reflected in the administrative record.

**Psychological Expert.**   Ms. Depp also asserts that the ALJ≠s finding that X.A.D.≠s impairments did not medically equal any Listing was Abased on her own layperson≠s psychological expertise.@   However, as noted above, the ALJ in fact relied on the evaluations of three state agency psychologists and a school assessment.   Ms. Depp≠s

16

reference to <u>Barnett v. Barnhart</u>, 381 F.3d 664, 670-71 (7th Cir. 2006); <u>Green v. Apfel</u>, 204 F.3d 780, 781 (7th Cir. 2000); and <u>Martinez v. Astrue</u>, 630 F.3d 693, 697 (7th Cir. 2011) is unsuitable.   In <u>Barnett</u>, the court could not locate an agency form, such as a Disability Determination and Transmittal form, that would have satisfied the ALJ≈s duty to consider an expert≈s opinion on medical equivalence. 381 F.3d at 670-71.   Such was not the case here; the state psychologists' opinions were clearly documented and accurately referenced. In <u>Green</u>, the ALJ reached a determination as to residual functional capacity based solely on the conclusion that the claimant≈s subjective complaints were not supported by the objective medical findings in the record, without consulting *any* apparent medical opinion. 204 F.3d at 781.   Here, in contrast, the ALJ cites the largely consistent evaluations of state psychologists, and in her analysis of Ms. Jackson's outlying opinion, the ALJ has explained her reason for discounting that conclusion.   In <u>Martinez</u>, the Seventh Circuit held that an ALJ must consider and articulate the multiple factors guiding her to her conclusions at each step—such as the extent of a hand injury coupled with mental illness symptoms of depression—with sufficient specificity to explain the weight being accorded. 630 F.3d at 697.   In our case, Claimant has not shown that X.A.D. discontinued her use of her prescription medications due to depressive or manic symptoms, which are hallmarks of her diagnosed anxiety, as was true with the claimant in <u>Martinez</u>.   Neither has Ms. Depp shown that any particular evidence was overlooked by the ALJ regarding X.A.D.≈s anxiety which would have tipped the balance in X.A.D.≈s favor.   There is no basis, therefore, to

find that the ALJ erred by failing to summon a psychologist to testify as to X.A.D.=s mental status and health.

Finally, an ALJ's decision to consult with psychological experts is clearly a discretionary matter.   20 C.F.R. ' 416.927(f)(2)(iii) (An ALJ may also ask for and consider opinions from medical experts on the nature and severity of a claimant's impairments); Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir.2000).   Therefore, Ms. Depp's argument that the ALJ's ruling should be set aside because she supplanted the views of the experts with her own lay opinion is erroneous.   The record clearly establishes through transmittal sheets as well as three state agency reviewing professional opinions an evidentiary basis for the ALJ's determination that X.A.D.=s impairments did not meet, medically equal, or functionally equal any childhood Listing. (R. 279-284; 321-326; 333-338).   Taken together, we conclude that there is substantial evidence supporting the ALJ=s finding.


**Interpretation of treatment evidence.**   Ms. Depp argues that the ALJ "ignored and mischaracterized treatment evidence" that if properly considered would have proven that X.A.D. met, medically-psychologically equaled, or functionally equaled Listing 112.02 (organic mental disorder).   We share the Commissioner's view that it is Ms. Depp's burden to show such gaps in the analysis by the ALJ, not merely to provide an enumeration of ignored or misstated evidence.   Ehrhart v. Secretary of Health & Human Services, 969

F.2d 534 (7th Cir. 1992).  Ms. Depp's attack of the ALJ's opinion is a laundry list of allegations unsupported by any explanations detailing the ALJ's alleged failure to specifically address each of them.   A "bare listing of evidence not specifically addressed by the ALJ fails to present an issue on review.@ Poston v. Astrue, 1:08-CV-1543-JMS-LJM, 2010 WestLaw 987734 (S.D. Ind. Mar. 15, 2010) (quoting Reese v. Astrue, 1:07CV1663WTL-JMS, 2009 WestLaw 499601 (S.D. Ind. Feb. 27, 2009)).   Lacking a cogent analysis, Ms. Depp has effectively foreclosed meaningful review by the court.   Whitlow v. Astrue, 2009 WestLaw 648602, 8 (S.D.Ind. March 10, 2009).   Nevertheless, our efforts to winnow through the pages of enumerated evidence purportedly ignored or mischaracterized by the ALJ reveal that many of the specifics claimed to have been ignored relate to X.A.D.'s intellectual and academic functioning, which facts are not in dispute.   Further, the evidence presented regarding X.A.D.'s anxiety, her anxiety medications, and difficulty coping with her peers and school environment were addressed by the ALJ in no fewer than six detailed paragraphs where she observed that subjective opinions, such as Ms. Depp's "assertions of [X.A.D.'s] inability to get along with siblings," must be weighed and balanced against X.A.D.'s subjective self-reports that she argued with her family but "has friends at school."   Moreover, as the ALJ noted, these "aggravations were quite minor in the face of a longitudinal record indicating improvement."   The ALJ thus concluded that the opinions of the state consultants should be accorded the greatest weight since they were consistent with the

overall medical record, and we cannot quarrel with that approach.

Accordingly, we hold that the ALJ neither ignored nor mischaracterized treatment evidence that would have proven that X.A.D. met, medically-psychologically equaled, or functionally equaled Listing 112.02 (organic mental disorder).  The record amply demonstrates that the ALJ based her decision on substantial evidence.

## IV.   Conclusion

Because the Commissioner's decision is supported by substantial evidence as detailed in the record, and because no legally cognizable error affected the Commissioner's determinations, the denial of Ms. Depp's application for benefits on behalf of her daughter, X.A.D., must be and is hereby AFFIRMED.

IT IS SO ORDERED.

Date:   09/28/2012

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

**Patrick Harold Mulvany**
2506 Willowbrook Parkway
Suite 201
Indianapolis, IN 46205
(317)253-8659
Fax: (317) 253-8676
patrick@mulvanylaw.com


**Thomas E. Kieper**
UNITED STATES ATTORNEY'S OFFICE
10 West Market Street
Suite 2100
Indianapolis, IN 46204
(317) 226-6333
Fax: (317) 226-6125
tom.kieper@usdoj.gov